UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00056 SEP |
| | ) | |
| STEVEN M. BRAZILE and | ) | |
| LORRAINE BRAZILE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff United States of America's Motion for

Summary Judgment (Doc. [64]); Defendant Steven Brazile's Motion to Dismiss Party or, in the

alternative, Motion for Summary Judgment (Doc. [72]); and three motions from Defendant

Lorraine Brazile:  Motion to Exclude Testimony of Summary Witness James Appelbaum (Doc.

[68]), Motion to Exclude the Testimony of Maia Brodie (Doc. [69]), and Motion for Summary

Judgment (Doc. [70]).  These motions are all fully briefed and ripe for disposition.

I.    BACKGROUND

On July 30, 2013, Steven Brazile ("Steven") pleaded guilty to one count of transportation

of securities obtained by fraud, in violation of 18 U.S.C. § 2314.  Doc [1] ¶ 8; *United States v.*

*Brazile*, No. 1:13-CR-00560 (N.D. Ill.).  Steven previously worked as a vice-president at the Sara

Lee Corporation ("Sara Lee") where he approved false and fraudulent invoices for goods and

services which were diverted to accounts he controlled.  Doc. [1] ¶ 9.  As part of Steven's plea

agreement with the Government, he acknowledged that he owed restitution in the amount of

$3,902,880.85.  *Id.*  The Government has a lien against Steven's property and rights to property

under 18 U.S.C. § 3613(c) as a result of the judgment entered against him on November 13,

1

2013, in the Northern District of Illinois.  *Id.* ¶ 10.  Upon completion of his term of imprisonment, the Northern District of Illinois transferred the criminal case to the Eastern District of Missouri, where Steven is on supervised release.  *Id.* ¶ 12; *United States v. Brazile*, No. 4:17CR344 RLW (E.D. Mo.).  According to the Government, Steven still owed $3,108,221.98 when the present case was initiated.  *Id.* ¶ 11.

Before the entry of Steven's sentence and judgment, Lorraine Brazile ("Lorraine"), Steven's then-wife, filed a suit for dissolution of marriage in the Circuit Court of St. Louis County, Missouri, on July 25, 2013.  *Id.* ¶ 16.  On August 29, 2013, Defendants entered into a voluntary Property Settlement and Separation Agreement ("Agreement"), and the circuit court entered a final judgment of dissolution awarding Lorraine child support and a portion of Steven's pension benefits.  *Id.* ¶¶ 17-18.  On August 24, 2016, Defendants submitted a qualified domestic relations order ("QDRO") to the divorce court, which assigned Lorraine 100% of Steven's lump sum benefit amount and monthly annuity benefits.  *Id.* ¶ 19.  The QDRO similarly awarded Lorraine 100% of the Braziles' marital home on Vienna Avenue (the "Vienna property"). *Id.* ¶ 20.

In this case, the Government alleges that the state court judgment awarded Lorraine all the marital assets that were not subject to forfeiture, and that Defendants made that arrangement in order to avoid paying restitution in Steven's criminal case.  *Id.* ¶¶ 16, 19-20, 22-24.  In September of 2017—four years after their marital dissolution and 13 months after they submitted their QDRO assigning the disputed assets to Lorraine—probation officers conducted a home visit and discovered that Steven and Lorraine were living together with their children and were raising their kids together as a "family."  *Id.* ¶ 28.  The Government contends that this demonstrates the Defendants entered into a "sham divorce" to transfer assets to Lorraine that could otherwise have

been used to pay victim restitution.  *Id.* ¶ 29.  The Government alleges fraudulent transfer in violation of 28 U.S.C. § 3304(a)(2) (Count I); fraudulent transfer in violation of 28 U.S.C. § 3304(b)(l)(A) (Count II); and fraudulent transfer in violation of 28 U.S.C. § 3304(b)(l)(B) (Count III).

On September 30, 2019, the parties filed dispositive motions and motions *in limine*. Steven moved to be dismissed as a party; Lorraine moved to exclude testimony from two of the Government's witnesses; and Steven, Lorraine, and the Government each moved for summary judgment.

## II.    DISCUSSION

### A.  <u>Steven's Motion to Dismiss (Doc. [72])</u>

Steven asks this Court to drop him as a party under Federal Rule of Civil Procedure 21. Rule 21 provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  According to Steven, dropping him from this action would be just and appropriate because "[n]o relief is requested against [him]," and "[h]e claims no interest in this proceeding." Doc. [72] at 4.  The Court disagrees.

The Government alleges that Steven has violated three provisions of the Federal Debt Collection Procedures Act ("FDCPA").  As a remedy, it asks this Court to void the final judgment and dissolution of property in Defendants' divorce case, enter judgment for the United States for the full value of the property transferred from Steven to Lorraine, and grant the United States a lien against all fraudulently transferred property such that it can seize that property immediately to pay Steven's restitution.  By seeking dissolution of agreements to which he is a party, reversal of his transfer of assets to Lorraine, and seizure of the house he lives in as well as

other assets that allegedly support him and his family—all in satisfaction of Steven's own debt—the Government most certainly seeks relief against Steven.

The Government also asks for "such other relief as may be appropriate and just."  Doc. [1] at 9-11. The remedies section of the FDCPA, Section 3306, provides that the Court may award:

> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States;
>
> (2) a remedy under this chapter against the asset transferred or other property of the transferee; or
>
> (3) any other relief the circumstances may require.

28 U.S.C. § 3306(a)(1)-(3).  Two of those three categories of remedy could directly implicate Steven.  Section 3306(1) permits the Court to void the transfer of property from Steven to Lorraine, restoring Steven's rights in that property, which the Government could then seize.  28 U.S.C. §§ 3306(a)(1), 3613(c)).  Alternatively, under Section 3306(3), this Court could order additional relief against Steven.  *See e.g.*, *United States v. Sheehan*, No. Civ.A.03–CV–6331, 2004 WL 2700348, at *6-7 (E.D. Pa. Nov. 23, 2004) (ordering under § 3306(3) that defendants execute documents to re-establish ownership rights as they existed prior to the fraudulent transfer).  Because the United States's complaint seeks genuine relief against Steven, and the Court is empowered by statute to grant it if warranted, the suggestion that he has no interest in this litigation, or is somehow a nominal defendant, is baseless.

Steven contests this conclusion by arguing that transferors are not *indispensable* parties to fraudulent transfer actions.  *See* Doc. [72] at 4; Doc. [90] at 2-3.  That argument conflates two different questions:  (1) whether the Court should exercise its discretion to dismiss Steven from

4

the lawsuit under Rule 21; and (2) whether he is an *indispensable* party under Rule 19(b). Only (1) is at issue here; therefore, Steven's arguments related to Rule 19(b) are inapposite.[1]

Given Steven's interest in the effect of this lawsuit on the amount of restitution he owes and how the Government collects it—not to mention his interest in the future ownership of his current residence—his claim to "no interest" in this litigation is implausible. Moreover, the Government's action arises from a series of events that Steven's own fraudulent misconduct set in motion. He is the central figure in the dispute. *See Coan v. Dunne*, No. 3:15-cv-00050 (JAM), 2019 WL 1513461, at *2 (D. Conn. Apr. 8, 2019) (refusing to drop defendant who was "a prime participant" in an allegedly fraudulent transfer).

Rule 21 is permissive and "gives the trial court a broad discretion in the matter of dropping or adding parties." *Lohman v. Gen. Am. Life Ins. Co.*, 478 F.2d 719, 728 (8th Cir. 1973). This discretion is limited by the rule's requirement that it be exercised justly. *See Standlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) ("[T]he 'discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is "just."'") (quoting *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006)). It is manifestly in the interest of justice that Steven remain a defendant in this lawsuit, and the Court sees no basis for dismissing him.[2]

---

[1] Rule 19(b) requires courts to consider dismissal of an *action* (i.e., not a party) when an indispensable party cannot be joined. Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the *action* should proceed among the existing parties or should be dismissed.") (emphasis added); *see also Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001). Steven does not argue that this action should be dismissed for failure to join an indispensable party, so Rule 19(b) appears to have no bearing on this case.

[2] The Court's holding is bolstered by the fact that Steven waited almost two years before moving to be dropped. Such delays are disfavored under Rule 21. *See* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, Civil 3d § 1688.1 at 510 (West 2019) ("[T]he court typically will deny a request that comes so late in the litigation that it will delay the

**B. <u>Lorraine's Motions in Limine</u>**

Lorraine filed two motions *in limine* to exclude testimony from the Government's witnesses.  The first motion (Doc. [68]) seeks to exclude testimony from the Government's summary witness, James Appelbaum ("Mr. Appelbaum"), while the second (Doc. [69]) seeks to exclude testimony from the Government's expert witness, Maia Brodie ("Ms. Brodie").

1.  <u>James Appelbaum (Doc. [68])</u>

The Government intends to call James Appelbaum as a summary witness.  Mr. Appelbaum is a senior financial investigator who works on a contractual basis with the FBI.  *See* Doc. [88-1] at 4:24-25.

The Government hired Mr. Appelbaum to review and summarize documents gathered from the Braziles' financial records.  *Id*. at 10-11.  Mr. Appelbaum divided these documents into three categories.  *Id*. at 12.  The first set consists of transaction details from accounts Steven and Lorraine maintained from 2006 to 2011, including accounts Steven used to defraud his former employer.  *Id*.  These documents are called the "Chicago Documents."  *Id*.  The second set consists of transaction details from the Braziles' "Oppenheimer accounts."  *Id*.  at 13.  And the third set consists of transactions details from accounts the Braziles maintained from 2011 to 2019, which Mr. Appelbaum called the "Brazile accounts."  *Id*.  To aid his testimony, Mr. Appelbaum created summary exhibits of the underlying documents.

Lorraine poses two challenges to Mr. Appelbaum's expected testimony.  First, she claims Mr. Appelbaum's summary exhibits of the Oppenheimer and Brazile accounts will not assist the trier of fact and are therefore inadmissible under Federal Rule of Evidence 1006.  Doc. [68] at 6-

---

case or prejudice any of the parties to the action.  Indeed, several courts have held that an objection to a defect of parties is waived if not raised promptly . . . .").

7.  Second, she claims Mr. Appelbaum's summary exhibits of the Chicago Documents are irrelevant to the instant dispute and therefore inadmissible under Federal Rule of Evidence 402.[3] *Id.* at 7.  The Court will consider these arguments in turn.

### a. The Oppenheimer and Brazile Accounts

Mr. Appelbaum is expected to testify about activity in the Oppenheimer and Brazile accounts, and he is expected to use summary evidence to assist his testimony.  Doc. [88-1] at 11:20-24.  Summary evidence is governed by Rule 1006.  *United States v. Hawkins*, 796 F.3d 843, 865 (8th Cir. 2015).

Under Rule 1006, "[s]ummary evidence is properly admitted when (1) the charts 'fairly summarize' voluminous trial evidence; (2) they assist the jury in 'understanding the testimony already introduced'; and (3) 'the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary.'"  *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)).  "'The admissibility of summary charts, graphs, and exhibits rests within the sound discretion of the trial judge.'" *United States v. Boesen*, 541 F.3d 838, 848 (8th Cir. 2008) (quoting *Green*, 428 F.3d at 1134 (internal quotations and citation omitted)).

Lorraine believes Mr. Appelbaum's summary exhibits of the Brazile and Oppenheimer accounts should be excluded because they will not assist the trier of fact.  Doc. [68] at 6. Lorraine claims the exhibits summarize only the "unremarkable proposition[s] that [she] was awarded the majority of financial assets in the divorce," that the remainder of the assets went to Steven, and that Steven's assets were later seized by the Government.  *Id.* at 2, 6-7.  "These

---

[3] Lorraine also argues that the Chicago Documents exhibits do not meet the standard for admissibility under Rule 1006.  Doc. [68] at 5-7.  Because the Court finds the Chicago Documents irrelevant under Rule 402, it need not consider that alternative argument.

propositions," she explains, "are obvious and their explanation in chart form only seeks to leave a misleading impression." *Id*. at 7.

The Eighth Circuit has not ruled on whether Rule 1006's admissibility requirements are relaxed for bench trials, but even under the Court's ordinary test, Mr. Appelbaum's exhibits pass muster. Lorraine cites no authority for her claim that "unremarkable" evidence must be excluded under Rule 1006, and the Court is unaware of any such authority. Additionally, the Court is not persuaded that these exhibits are unremarkable. As Lorraine concedes, Mr. Appelbaum's exhibits demonstrate that she received most of the Braziles' financial assets in the divorce settlement. This fact is crucial to the Government's argument that the Braziles entered into a "sham divorce" in order to protect their assets. Accordingly, the Court denies Lorraine's request to exclude Mr. Appelbaum's testimony as to the Brazile and Oppenheimer accounts.

### b. *The Chicago Documents*

Lorraine challenges the relevance of the Chicago Documents. Under Rule 402, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution, legislation, or applicable evidentiary rules, and conversely, all irrelevant evidence is inadmissible." *United States v. Holmes*, 413 F.3d 770, 773 (8th Cir. 2005) (citing Fed. R. Evid. 402). "Relevant evidence is defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Nadeau*, 598 F.3d 966, 968 (8th Cir. 2010) (quoting Fed. R. Evid. 401).

Lorraine believes the Chicago Documents are irrelevant because this case focuses squarely on the Braziles' 2013 divorce settlement. Doc. [68] at 8. So, she argues, transactions made between 2006 and 2011 – the only years the Chicago Documents reflect – have no

relevance to whether the Braziles' divorce settlement constituted a fraudulent transfer in violation of 28 U.S.C. § 3304.  The Court agrees.

The transaction at issue in this case is the Braziles' 2013 divorce settlement.  Doc. [68] at 8.  Yet the Chicago Documents reflect transactions that occurred only up until 2011, two years before the Braziles' divorce.  *See* Section II.B.1, *supra*.  The Court cannot see how these transactions have any relevance to the issue of whether the Braziles' 2013 divorce settlement constituted a fraudulent transfer in violation of 28 U.S.C. § 3304.  And the Government's efforts to address this discrepancy only compound the confusion.

In its Response, the Government dismisses Lorraine's argument as "bizarre," but it provides no satisfactory explanation for the Chicago Documents' relevance.  Doc. [88] at 7.  Instead, the Government cites *United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008), for the proposition that "[r]estitution tracks the recovery to which the victim would have been entitled in a civil suit against the criminal."  Doc. [88] at 8.  The Government then asserts that the Chicago Documents are relevant because they "track[] money and property Defendants fraudulently transferred both before and after Steven's criminal conviction – money the United States is entitled to recover for the victim of Steven's crimes."  *Id*.

Putting aside the improbability of the Chicago Documents (which, again, cover only transactions occurring between 2006 and 2011) having any bearing on transfers occurring *after* Steven's 2013 conviction, it is plain the Government has misread the court's statement in *Chalupnik*.  The Government seems to read the word "tracks" as "traces," suggesting that restitution must be paid using the exact proceeds of the crime.  But this is not what the *Chalupnik* court or other courts have stated.

The "tracking" language on which the Government relies first appeared in *United States v. Behrman*, 235 F.3d 1049 (7th Cir. 2000) (quoted in *Chalupnik*, 514 F.3d at 753).  There, the Seventh Circuit stated that "restitution tracks 'the recovery to which [the victim] would have been entitled in a civil suit against the criminal.'"  *Id.*  at 1052.  The court's statement, however, merely paraphrased an earlier opinion, which characterized restitution as "giving the victim of the crime the recovery to which he would have been entitled in a civil suit against the criminal." *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999).  Put differently, criminal restitution "tracks" civil recovery in the sense that it *parallels* civil recovery, not in the sense that it traces the proceeds of the underlying fraud.

Furthermore, it is unclear what the Government would gain by tracing the proceeds of the fraud.  Steven acknowledged in his 2013 plea agreement that he owed restitution in the amount of $3,902,880.85.  Doc. [1] ¶ 9.  As a result, the Government has a lien against Steven's property and rights to property under 18 U.S.C. § 3613(c).  *Id.*  ¶ 10.  Nothing in Section 3613(c) limits the Government's lien to the traceable proceeds of the underlying fraud.  Tracing thus serves no useful purpose at this juncture and does not establish the Chicago Documents' relevance.

As the proponent of the evidence, the Government must establish its relevance by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) (holding that preliminary questions of admissibility under Fed. R. Evid. 104(a) are governed by a preponderance of the evidence standard); *see also In re Prempo Prods. Liab. Litig.*, No. 4:03–CV–1507–BRW, 2012 WL 13034063, at *1 (E.D. Ark. Apr. 19, 2012) ("Rule 104(a) requires the proponent of evidence to establish its admissibility by a preponderance of the evidence.").  Here, the Government has not shown by a preponderance of the evidence that summary exhibits of the Chicago Documents have any relevance to the allegedly fraudulent transfer at issue in this

case.  Accordingly, the Court must exclude Mr. Appelbaum's summary testimony as to the Chicago Documents.

### c. Limiting Instruction

Lorraine also asks the Court to issue a limiting instruction in the event this case is tried before a jury.  Doc. [68] at 9.  The Court previously denied the Braziles' jury demand.  Doc. [58].  Lorraine appealed the denial to the Eighth Circuit Court of Appeals, which held the matter in abeyance pending this Court's ruling on the parties' cross-motions for summary judgment. *See In re: Lorraine Brazile*, Cause No. 19-3085 (8th Cir. Dec. 4, 2019).  Lorraine's request for a limiting instruction is therefore premature.  If, after review by the Eighth Circuit, this case is ultimately tried before a jury, Lorraine may renew her request for a limiting instruction.

### 2.  Maia Brodie (Doc. [69])

Lorraine also moves to exclude testimony from the Government's expert witness, Maia Brodie ("Ms. Brodie"), under Rule 702 and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Ms. Brodie is an attorney who specializes in family law and has over thirty years of experience handling divorce cases. *See* Doc. [69-6] at 2.  She has provided a report containing the following six conclusions regarding the Braziles' divorce proceedings:

1) That Lorraine's failure to amend her Statement of Property to identify certain "marital" assets as being subject to potential forfeiture was a material omission. *Id*. at 4-5.

2) That Lorraine's failure to list Steven's criminal proceedings under subsection L of her Statement of Property was a material omission. *Id*. at 5.

3) That the Braziles settled their divorce proceedings with unusual speed, which is evidence of their intent to shield their assets from forfeiture. *Id*. at 5-6.

4) That the Braziles improperly calculated Steven's projected income during his incarceration and inflated the Circuit Court's award of child support. *Id*. at 6.

5) That the Braziles' division of property awarded a disproportionate and unconscionable amount of assets to Lorraine, and that this award deprived the United States of its ability to collect victim restitution.  *Id*. at 6-7.

6) That Steven and Lorraine's cohabitation after Steven's incarceration is evidence that the marriage was not irretrievably broken and that the Braziles entered into the divorce to shield their assets from forfeiture.  *Id*. at 7.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 thus allows for the admission of expert testimony from a wide range of fields of expertise; however, it builds in a reliability factor to prevent admission of "junk science."  While Rule 702 does not set forth any criteria for assessing this reliability factor, the Supreme Court has provided considerable guidance.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Court focused on the admissibility of scientific expert testimony and identified several factors to help lower courts assess the reliability of scientific theories or techniques.  The Court further explained that the trial judge has a "gatekeeping" obligation to determine whether expert testimony is admissible under Rule 702.  Later, in *Kumho Tire Company, Ltd., et al. v. Carmichael, et al.*, 526 U.S. 137 (1999), the Court concluded that *Daubert*'s gatekeeping obligation applied not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge.

*Daubert* set forth four factors to guide district courts in resolving admissibility questions: (1) whether the expert's methodology has been tested; (2) whether the technique has been

12

subjected to peer review and publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique has been generally accepted in the proper scientific community.  *Daubert*, 509 U.S. at 593–94; *see also Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1207–08 (8th Cir. 2000).  These four factors are not exclusive and may not be particularly pertinent to a court's reliability assessment.  The trial court is granted considerable flexibility in adapting its analysis to fit the particular facts of a case.  *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1082 (8th Cir. 1999).

> *Daubert* and *Kumho Tire* notwithstanding, "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding '"whether an expert's testimony will be useful should generally be resolved in favor of admissibility."'"  *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (quoting *Larabee v. MM & L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quoting J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 702[02] at 702–30 (1988))).  The *Daubert* requirements are relaxed, moreover, in bench trials.  *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012).  And district courts enjoy "wide latitude in determining whether an expert's testimony is reliable."  *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) (quoting *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057 (8th Cir. 2005)).

> Lorraine believes Ms. Brodie's testimony founders under Rule 702 and *Daubert*. Lorraine's challenges to Ms. Brodie's testimony can be divided into five categories: (1) challenges to Ms. Brodie's assumptions; (2) challenges to Ms. Brodie's qualifications; (3) challenges to Ms. Brodie's conclusions; (4) challenges to Ms. Brodie's reliance on personal experience; and (5) challenges to Ms. Brodie's speculation.

### a. *Ms. Brodie's Assumptions*

The thrust of Lorraine's argument is that Ms. Brodie's conclusions rest on faulty assumptions about the effect Steven's criminal proceedings had on the divorce settlement. Lorraine claims, for instance, that Ms. Brodie's opinion suffers because it "rests on the faulty assumption that the fundamental legal status of  the 'marital' property attributed to Steven in the statement of  property changed with respect to Lorraine's interest because this property became subject to forfeiture after the filing of the statement of property."  Doc. [69] at 6.  Lorraine similarly argues that Ms. Brodie's opinion "rests further on the faulty, speculative assumption that Kim Bettisworth (Ms. Brazile's divorce attorney) or Ms. Brazile herself knew or would have known of the preliminary order of forfeiture, understood its import, or concluded that it altered title to assets in a way that would have materially affected the accuracy of the Statement of Property form . . . ."  *Id*.  Lorraine also casts doubt on the factual accuracy of Ms. Brodie's underlying data.  *See id*. at 10-12.

Generally speaking, experts' assumptions are not a basis for exclusion under *Daubert*. The Eighth Circuit has made clear that "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony."  *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (citing *Daubert*, 509 U.S. at 596); *see also David E. Watson, P.C.*, 668 F.3d at 1015 (upholding district court's denial of *Daubert* motion where movant "disagree[d] with the [expert's] underlying assumptions").  Litigants are instead encouraged to challenge these assumptions "both through cross-examination and by presenting their own expert witness."  *Synergetics, Inc.*, 477 F.3d at 956.  As such, Lorraine's use of a *Daubert* motion to attack Ms. Brodie's underlying assumptions is improper.

The same goes for Lorraine's challenges to the factual basis of Ms. Brodie's opinion. *See Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (internal citations and quotation marks omitted)). To be sure, when an expert's factual basis is too far afield of the facts of the case, it must be excluded. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000) ("[E]xpert testimony must not only be based on reliable science but must also 'fit' the particular facts of the case."). But Lorraine has not shown here "that there is simply too great an analytic gap between the data and [Ms. Brodie's opinion]." *Id.* (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

### b. *Ms. Brodie's Qualifications*

"A witness can be qualified as an expert by knowledge, skill, experience, training, or education, and it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (internal citation and quotation marks omitted). Important here, "[o]nce initial expert qualifications and usefulness to the jury are established . . . a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents." *Id.*

Lorraine believes Ms. Brodie exceeded the scope of her expertise by opining on federal forfeiture law, an area in which Ms. Brodie—a family law practitioner—has no experience. Doc.

[69] at 5.  But as the Government correctly observes, Ms. Brodie did not opine on federal forfeiture law.  Doc. [89] at 3.  Rather, Ms. Brodie testified about the effect of failing to identify certain marital assets as subject to forfeiture.  Lorraine contends this testimony still exceeds the scope of Ms. Brodie's expertise because it is informed by "imprecise and inaccurate assumptions about the precise timing of forfeiture effects."  Doc. [93] at 2.  That contention addresses Ms. Brodie's assumptions, however—not her qualifications.  As such, this contention is indistinguishable from Lorraine's first category of challenges and fails for the same reasons.

### c.  *Ms. Brodie's Conclusions*

Lorraine characterizes several of Ms. Brodie's conclusions as "fundamental error[s] of law."  Doc. [69] at 6.  She asserts Ms. Brodie misread the Local Rules of the St. Louis County Circuit Court and thus drew erroneous inferences about Lorraine's obligation to amend her statement of property.  *Id*. at 7.  She also makes much of the fact that Ms. Brodie's conclusions sometimes appear at odds with testimony from Judge Borbonus, the judge who presided over the Braziles' divorce.  *Id*. at 8, 9.  These arguments challenge the conclusions Ms. Brodie reached, not the reliability of her testimony.  "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert*, 509 U.S. at 596.  Disagreement with Ms. Brodie's conclusions is not grounds for excluding her testimony.

### d.  *Ms. Brodie's Personal Experience*

Lorraine further objects to Ms. Brodie's reliance on her personal experience as a family law attorney.  Lorraine takes particular issue with Ms. Brodie's conclusion that the Braziles finalized their divorce with unusual speed, faulting her for "relying only on her personal experiences in her own practice as a family law attorney, not on any proper analysis based in review of the practices of other attorneys."  Doc. [69] at 8-9.  But personal experience is a

16

perfectly legitimate basis for expert testimony.  Indeed, the Supreme Court's opinion in *Kumho Tire* expressly contemplates expert testimony based on personal experience.  *See* 526 U.S. at 152 (noting that *Daubert*'s gatekeeping requirement exists "to make certain that an expert, whether basing testimony upon professional studies *or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field") (emphasis added); *see also American Auto. Ins. Co. v. Omega Flex, Inc.*, 738 F.3d 720, 722 (8th Cir. 2015) (quoting *Kumho Tire*, 526 U.S. at 152)).

Ms. Brodie's reliance on her experience is not only acceptable but expected here.  Ms. Brodie stated that she believed a complex divorce case like the Braziles' could not ordinarily be resolved in so short a time frame.  It would be difficult, to say the least, for Ms. Brodie to effectively opine on this issue without drawing on her personal experience.  "The reliability of such evidence comes not from scientific foundations but from [Ms. Brodie's] personal knowledge and experience."  *United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (finding that the district court did not abuse its discretion by admitting expert testimony based on personal experience).

### e.   *Ms. Brodie's Speculation*

Finally, Lorraine accuses Ms. Brodie of engaging in unfounded speculation.  *See, e.g.,* Doc. [69] at 7, 8, and 12.  Speculation is disfavored under *Daubert*, but "that does not mean that testimony must be excluded if an expert occasionally speculates (which is inevitable)."  *Group Health Plan, Inc. v. Phillip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003).  "A certain amount of speculation is necessary, an even greater amount is permissible (and goes to the weight of the testimony), but too much is fatal to admission."  It is up to the district court to determine whether an expert has engaged in "too much" speculation.  *Id.*

Lorraine provides several examples of Ms. Brodie's speculation.  For instance, she says Ms. Brodie speculated about the weight judges give to statements of property in divorce proceedings, the "salvageability of, and reasons for, [the Braziles'] divorce," and the "Braziles' intent with respect to the calculation of imputed income at a sum of approximately half of Steven Brazile's prior income during his prior employment."  Doc. [69] at 7, 10, 12.

To the extent Ms. Brodie speculates about the importance of statements of property, judges' tendencies in divorce proceedings, and similar topics, such speculation is acceptable given her experience practicing family and divorce law.  The Court cautions, however, that Ms. Brodie may not testify about the Braziles' intent in seeking or finalizing their divorce.  This is for two reasons.  First, as Lorraine points out, lawyers are not trained mind-readers, and Ms. Brodie is in no better position than the fact-finder to determine the Braziles' intent.  Second and relatedly, Ms. Brodie's speculation about the Braziles' reasons for entering into their divorce and transferring their assets are legal conclusions about the precise issues in this case.  Such conclusions are not proper expert testimony.  *See In Re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) (finding exclusion appropriate where expert opinions "were more or less legal conclusions about the facts of the case . . . ."); *see also Covertino v. United States Dep't of Justice*, 772 F.Supp.2d 10, 12 (D.D.C. 2010) ("Legal conclusions, unlike factual assessments, 'intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law.") (quoting *United States ex rel. Mossey v. Pal–Tech, Inc.*, 231 F.Supp.2d 94, 98 (D.D.C. 2002)).

Accordingly, Lorraine's motion to exclude Ms. Brodie's testimony is granted as to Ms. Brodie's speculations about the Braziles' reasons for seeking a divorce or disposing of their assets in a certain way.  The motion is denied in all other respects.

18

### C. **Motions for Summary Judgment**

The Court turns now to the parties' pending motions for summary judgment. Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant. *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

The Government, Lorraine, and Steven each move for summary judgment. Docs. [64], [70], and [72]. The Court will address these motions in reverse order.

#### 1. Steven's Motion for Summary Judgment (Doc. [72])

Steven asserts that he is entitled to summary because the Government's claims are barred by res judicata. Doc. [72] at 5. "The doctrine of claim preclusion, or res judicata, prevents a party from relitigating claims and issues that have been previously adjudicated." *Johnson v. Vilsack*, 833 F.3d 948, 953 (8th Cir. 2016). "To establish that a claim is barred by res judicata a

party must show: '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)).  For the fourth element, the Eighth Circuit has held that two suits are based on the same claim or cause of action if they "arise[] out of the same nucleus of operative facts." *Id.* at 641 (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990), *cert. denied* 498 U.S. 823 (1990).

According to Steven, the Government is precluded from challenging Defendants' separation agreement because it failed to do so during Steven's criminal proceedings.  Doc. [72] at 6.  In those proceedings, the Government filed a motion for turnover of Steven's pension benefits, which the Northern District of Illinois denied.  *Id.*; *see also* Doc. [73-4].  Steven argues that the present action arose from the same nucleus of operative fact as the motion for turnover, thus foreclosing the Government's ability to bring its present claims.

The Government argues that it could not have raised its fraudulent transfer claims during Steven's criminal proceedings because the FDCPA requires that such claims be filed as separate civil actions.  Doc. [81] at 9.  In support of its position, the Government cites *United States v. Adamson*, No. 4:08–cr–00272–BLW, 2013 WL 273311 (D. Idaho Jan. 24, 2013).  While the holding in *Adamson* is not quite as broad as the Government suggests, the Court nonetheless finds it persuasive.

The facts of *Adamson* mirror this case almost perfectly.  There, a husband pleaded guilty to willful failure to pay over taxes and was ordered to pay millions of dollars in restitution. *Adamson*, 2013 WL 273311 at *1.  The husband and wife executed a martial agreement that

20

transferred substantial portions of their marital property to the wife.  *Id*.  During the husband's criminal proceedings, the Government moved to void the marital agreement.  *Id*.

In denying the Government's motion, the Court held that the FDCPA's statutory scheme required that fraudulent transfer claims "be resolved under the process dictated by the Federal Rules of Civil Procedures."  *Id*. at *2.  From this, the Court reasoned that the Government could not "resolve its fraudulent conveyance claim by a simple motion to the Court."  *Id*.  Instead, "the government's fraudulent conveyance claim should begin with the filing of a complaint, even if that complaint is filed within this criminal docket number as a conjoined proceeding."  *Id*.

The Court agrees with *Adamson*'s characterization of the FDCPA's statutory scheme. Section 3306 unambiguously contemplates that fraudulent transfer claims will be governed by the Federal Rules of Civil Procedure, which means they must be brought separately from any criminal proceeding.  *See* 28 U.S.C. § 3306(a) ("In an action or proceeding under this subchapter for relief against a transfer or obligation, the United States, subject to section 3307 and to applicable principles of equity and *in accordance with the Federal Rules of Civil Procedure*, may obtain . . . .") (emphasis added).

The *Adamson* decision does recognize the possibility of filing such an action within the criminal docket "as a conjoined proceeding."  But even a conjoined proceeding requires the filing of a separate civil complaint.  The government's fraudulent transfer claims therefore could not have been raised as a part of its criminal action against Steven.  It is worth noting, moreover, that the Eighth Circuit has treated civil and criminal actions as separate causes of action for the purposes of res judicata.  *See Morse v. C.I.R.*, 419 F.3d 829, 834 (8th Cir. 2005) ("The government may have both a civil and a criminal cause of action as a result of a single factual

situation, and thus the government does not surrender its right to seek civil fraud penalties by undertaking a criminal tax prosecution.") (internal quotation marks omitted).

Accordingly, the Court finds that the Government's suit is not barred by res judicata.

### 2. Lorraine's Motion for Summary Judgment (Doc. [70])

Lorraine moves for summary judgment on several of her affirmative defenses. Doc. [70] at 1. Lorraine believes she is entitled to summary judgment for two reasons. First, because collateral estoppel precludes the Government from challenging the legitimacy of the QRDO. Doc. [71] at 5. And second, because Steven's plea agreement prohibits the Government from seeking forfeiture of the Vienna property and Oppenheimer accounts. *Id*. at 8-9. Neither argument is successful.

#### a. Collateral Estoppel

Lorraine contends that the Government is collaterally estopped from challenging the legitimacy of the Braziles' QDRO due to a ruling by the Northern District of Illinois in Steven's criminal proceedings. *Id*. at 7. There, the court held that the Government was not entitled to turnover of assets that had been transferred to Lorraine under the QDRO. Doc. [71-11]. The court explained that it was neither empowered nor inclined to revisit the Missouri court's distribution of the Braziles' marital assets. Doc. [71-11] at 4. Lorraine reasons that this ruling precludes the Government from relitigating the QDRO here. Doc. [71] at 7.

The doctrine of collateral estoppel—also called "issue preclusion"—prevents a party from relitigating an issue already resolved in another lawsuit. In the Eighth Circuit, collateral estoppel has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue

sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102-03 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).  The party invoking the doctrine has the burden of establishing all five elements.  *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). Lorraine maintains that she carries that burden, but in fact she stumbles on the second element.

Lorraine argues that the issues raised in the present action are the same as the issues raised in the Government's motion for turnover in Steven's criminal proceeding.  She asserts (without supporting citations) that the previous motion "sought to invalidate the QDRO on the same bases, among others, that the Government seeks to invalidate the QDRO in this case . . . ." Doc. [72] at 7.  The Government, for its part, counters that "the turnover motion . . . did not allege a fraudulent transfer under the FDCPA."  Doc. [83] at 5 (emphasis deleted).

The Court has reviewed the record from the Northern District of Illinois and finds that the issues raised in this case differ substantially from the issues raised in the Government's motion for turnover.  At issue in the Government's motion were:  whether Steven's pension benefits were exempt assets under 26 U.S.C. § 6334(a)(8); whether the Government's lien on Steven's assets was prior to Lorraine's interest in those assets under the QDRO; and whether the Government's restitution efforts were constrained by the agreed-upon payment schedule.  Doc. [71-17] at 1-3.  Those issues are patently different from the question of whether the QDRO amounted to a fraudulent transfer under the FDCPA.  Moreover, the record does not support Lorraine's assertion that the Government challenged the legitimacy of the QDRO during Steven's criminal proceedings.  On the contrary, the Government appeared at times to assume its legitimacy.  *See, e.g.*, Doc. [71-18] at 7; Doc. [92-1] at 10.

23

But even if the Government had challenged the QDRO's legitimacy, that fact alone would not trigger collateral estoppel.  "Collateral estoppel is not appropriate when the same facts were analyzed under similar but significantly different criteria in the earlier adjudication."  *Fife v. Bosley*, 100 F.3d 87, 89-90 (8th Cir. 1996).  For collateral estoppel to bar the Government's fraudulent transfer claims, Lorraine would have to show that the Government previously advanced substantially the same evidence and legal arguments.  *See South Dakota Pub. Utilities Comm'n v. Fed. Energy Regulatory Comm'n*, 690 F.2d 674, 678 (8th Cir. 1982) (refusing to apply collateral estoppel where the previous action concerned "different statutes and different bodies of evidence . . . ."); *see also* Restatement (Second) of the Law § 27, cmt c (Am. Law. Inst. 1982) (explaining that collateral estoppel is most appropriate when there is "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first . . . .").

This case does not involve the same arguments or evidence as the Government's motion for turnover.  The Government's fraudulent transfer claims are governed by a different statutory framework and depend on utterly different facts than the motion for turnover.  In short, nothing about the two actions overlaps except for their shared focus on the Braziles' QDRO, which is not enough to render the issues identical for the purpose of collateral estoppel.  *See B & B Hardware, Inc. v. Hargis Indus. Inc.*, 575 U.S. 138, 154 (2015) ("[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.") (alteration in original) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4417 (2d ed.2002)).

Accordingly, Lorraine has not carried her burden in establishing the elements for collateral estoppel.

   b.   *Steven's Plea Agreement*

Lorraine raises several defenses applying various theories of contract law to Steven's plea agreement.  Although her arguments bleed together, Lorraine appears to assert three different defenses: (1) waiver; (2) equitable estoppel; and (3) breach of the plea agreement.  Doc. [70] at 1; Doc. [71] at 9; Doc. [92] at 6.  The basic premise for each of these defenses is the same:  The Government lost its right to pursue claims against the Vienna property and Oppenheimer accounts when it agreed to omit those items from Steven's plea agreement.  Doc. [71] at 8-9.

As the party asserting these defenses, Lorraine is tasked with establishing their applicability.  *See* Williston on Contracts § 39.21 ("The party claiming that there has been a waiver . . . has the burden of proof on that issue."); *Charleston Hous. Auth. v. United States Dep't of Agriculture*, 419 F.3d 729, 739 (8th Cir. 2005) ("To succeed on a claim of equitable estoppel against the government, a plaintiff must not only prove all the elements of equitable estoppel, but also that the government committed affirmative misconduct."); *United States v. Yellow*, 627 F.3d 706, 709 (8th Cir. 2010) ("The party asserting the breach . . . has the burden of establishing a breach.") (quoting *United States v. Smith*, 429 F.3d 620, 630 (6th Cir. 2005)).

To begin with, Lorraine provides no basis for her standing to raise defenses under the terms of Steven's plea agreement.  Non-parties to a contract typically cannot assert claims or defenses based on that contract.  *See ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc.*, 133 F.3d 664, 669 (8th Cir. 1998) ("In general, a stranger to a contract has no rights under the contract unless the third party is an intended beneficiary of the contract, or there is a duty owed to the third party that is discharged by the contract.").  Even assuming that she has standing to assert them, though, her contract arguments all fail.

i.   Waiver

Lorraine maintains that the Government waived its right to pursue claims against the Vienna property and Oppenheimer accounts.  Waiver is ordinarily a question of fact for the factfinder.  Williston on Contract § 39:21.  "When, however, there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of whether a waiver has occurred becomes one of law."  *Id*.  To prove waiver as a matter of law, the asserting party must establish "the 'intentional relinquishment or abandonment of a known right.'"  *United States v. Corona-Verduzco*, 963 F.3d 720, 722 (8th Cir. 2020) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

The Government argues that Lorraine's waiver defense fails as a matter of law because the plea agreement concerned only items subject to forfeiture, not items that could be subject to a later restitution action.  Doc. [83] at 7.  Restitution, the Government says, is distinct from forfeiture, making the exclusion of certain property and accounts irrelevant for the purposes of this action.  *Id*.  The Court agrees.  The Government's decision not to seek forfeiture of certain items does not bar it from attempting to recover those items in a subsequent restitution action.  Indeed, as the plea itself recognizes, "forfeiture of property is not typically treated as satisfaction of . . . restitution . . . ."  Doc. [71-3] ¶ 24.  Lorraine's waiver argument therefore fails.

ii.   Equitable Estoppel

Next, Lorraine argues that the Government should be equitably estopped from pursuing its restitution claims, Doc. [92] at 6, and specifically, that "the Government should not be permitted to reverse its position taken" during the plea negotiations, Doc. [71] at 9.  She points out that the Government previously agreed not to seek forfeiture of the Vienna property, and she insists this concession "was instrumental in [Steven] accepting his plea agreement."  *Id*. at 8-9.

26

"A person seeking to estop the government must establish (1) the traditional elements of estoppel and (2) that the government conduct challenged amounts to 'affirmative misconduct.'" *Chien-Shih Wang v. Attorney Gen. of the United States*, 823 F.2d 1273, 1276 (8th Cir. 1987) (quoting *Heckler v. Cmty. Health Servs. of Crawford*, 467 U.S. 51, 61 (1984)).  The traditional elements of estoppel require that "the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse."  *Heckler*, 467 U.S. at 59 (internal quotation marks omitted).

As a non-party to the plea negotiations, Lorraine had no adversary—Steven did.  Steven is therefore the only defendant who could have "relied on its adversary's conduct."  Lorraine's own briefing underscores this point, as she cites examples of only *Steven's* reliance on the Government's representations.  *See, e.g.*, Doc. [92] at 6 ("Steven's plea agreement was the result of careful and honest plea negotiations—negotiations in which [sic] *Steven relied on* when entering his plea . . . .") (emphasis added).  Because Lorraine could not have relied on the Government's conduct during Steven's plea negotiations, Lorraine cannot estop the Government on the basis of those negotiations.

### iii.  Breach of the Plea Agreement

Lastly, Lorraine intimates that the Government's claims are "contrary to the terms of [Steven's] plea agreement," Doc. [71] at 9, and she argues "that the terms of the plea agreement should not be undermined by the Government's subsequent actions here," Doc. [91] at 6.  Essentially, Lorraine argues that Steven's plea agreement bars the Government from bringing this action.

Lorraine's argument fails because she does not identify which provision of the agreement the Government allegedly breached.  Instead, she merely parrots the Supreme Court's statement

that "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Doc. [71] at 8 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).  As already explained, the Government never promised not to pursue restitution actions against the Vienna property or Oppenheimer accounts.  *See* Section II.C.2.b.i, *supra*.

For the foregoing reasons, the Court denies all of the defenses Lorraine advances in her Motion for Summary Judgment.[4]

### 3.  The Government's Motion for Summary Judgment (Doc. [64])

Finally, the Court turns to the Government's Motion for Summary Judgment.  The Government moves for summary judgment on Counts I and III of its Complaint.  Doc. [66] at 5.  A victory on either of these Counts entitles the Government to the full remedies of 28 U.S.C. §§ 3306 and 3307.  The Court finds in favor of the Government on Count III and therefore will not address Count I.

Count III alleges constructive fraud in violation of 28 U.S.C. § 3304(b)(1)(B).  Doc. [1] at 11.  To prove constructive fraud under that section, the Government must show that Steven transferred assets to Lorraine "without receiving a reasonably equivalent value in exchange for the transfer" at a time when he "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."  28 U.S.C. § 3304(b)(1)(B)(ii).

---

[4] In her reply brief, Lorraine asserts the Government could not have executed its lien on the Vienna property prior to the Braziles' divorce.  Doc. [92] at 8.  She then asks the Court not to let the Government "take advantage" of the divorce by executing on the property now.  *Id*. at 10.  This argument does not respond to any argument raised by the Government, nor did it appear in Lorraine's initial summary judgment briefing.  As such, the Court will ignore it.  *See Fay Fish v. United States*, 748 F.App'x 91, 92 n.2 (8th Cir. 2019) (explaining that a reply brief is "too late" to properly raise a new argument).

As noted already, the Government alleges the Braziles' divorce settlement gave Lorraine all of the couple's viable assets in order to insulate those assets from Steven's criminal restitution liabilities.  The Government thus contends that all the elements of § 3304(b)(1)(B) have been met.  Doc. [66] at 5-12.  The Braziles respond that whether Steven received "reasonably equivalent value" in the divorce and whether he "reasonably should have believed" he would incur debts beyond his ability to pay are questions of fact inappropriate for summary judgment. Doc. [84] at 4, 7; Doc. [86] at 9.  Lorraine further believes there is a factual dispute concerning her good faith defense under 28 U.S.C. § 3307(a).  Doc. [86] at 14.

### a.  *Reasonably Equivalent Value*

A debtor receives reasonably equivalent value for a transfer "if the debtor receive[s] a fair exchange in the market place for the goods transferred." *In re Kendall*, 440 B.R. 526, 533 (8th Cir. BAP 2010).  This inquiry turns primarily on the market value of the exchanged items. *Id*. But courts will also consider "the good faith of the parties and whether the transaction was an arm's length transaction between a willing buyer and a willing seller." *Id*.  Ultimately, whether a transfer was for reasonably equivalent value is determined by "common sense, measured against market reality." *Id*.  (internal quotation marks omitted) (citation omitted).

The Government argues that Steven did not receive reasonably equivalent value in the divorce settlement because the assets allocated to him were either already seized by the Government or subject to a preliminary order of forfeiture.  Doc. [66] at 7-10.  The Government also notes that the Braziles based Steven's child support payments off a roughly $100,000 annual salary, which was unrealistic given that Steven had been unemployed for several years and was facing a prison sentence.  *Id*. at 10.  Considering the status of the assets Steven received, plus his

29

inflated child support liabilities, the Government concludes that Steven did not receive reasonably equivalent value in the divorce settlement. *Id.*

Steven and Lorraine both highlight the inherently factual nature of the reasonably equivalent value inquiry. *See* Doc. [84] at 5; Doc. [86] at 9. There is no doubt this inquiry typically involves questions of fact. But the presence of factual questions does not preclude summary judgment, especially if the answers are undisputed. *See, e.g.*, *United States v. Septon*, No. 14-cv-1139 (PAM/JSM), 2016 WL 3030237, at *4 (D. Minn. May 26, 2016) ("Mrs. Septon is correct that the determination whether a transfer is for reasonably equivalent value is a question of fact. But even if Mrs. Septon disputes some of the facts in this matter, summary judgment may still be appropriate.") (internal citation omitted) (citing *Torgerson v. Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011)).

It is undisputed that virtually all the assets Steven received in the settlement had either already been seized by the Government or were already subject to the preliminary order of forfeiture. Doc. [87] ¶¶ 16-17, 23-26, 32-43. Also undisputed is the fact that the Braziles calculated Steven's child support using a salary that did not reflect his current earnings. Doc. [87] ¶¶ 48, 51. Thus, Steven's share of the assets was, at most, "nominal when taking into consideration [his] preexisting liabilities."[5] *United States v. Schippers*, 982 F.Supp.2d 948, 969 (S.D. Iowa 2013).

Steven posits that even if the divorce settlement itself appears unreasonable, there remains a genuine factual dispute about the value of his civil suit against Sara Lee. Doc. [84] at 7. But "[t]he value of an asset is determined from a creditor's point of view." *United States v.*

---

[5] Lorraine challenges this conclusion by contesting the applicability of the relation-back doctrine. Doc. [86] at 12-13. The Court's holding is not based on the relation-back doctrine, so it need not address that argument.

*Loftis*, 607 F.3d 173, 177 (5th Cir. 2010) (citation omitted).  Steven's pending civil suit against his former employer "was of questionable worth from a creditor's perspective . . . ."  *Id*.  Accordingly, the Court finds that Steven did not receive reasonably equivalent value in the divorce settlement.

### b.  *Debts Beyond Steven's Ability to Pay*

The Government alleges that Steven reasonably should have believed he would incur debts beyond his ability to pay when he defrauded Sara Lee or, at the very least, when he later pleaded guilty and agreed to pay nearly $4,000,0000 in restitution.  Doc. [66] at 10-11.  Steven maintains that he believed his civil claims against Sara Lee would result in an award large enough to cover his restitution debts.  Doc. [84] at 7-8.  He notes that the suit settled after he and Sara Lee released each other from their respective claims.  *Id*. at 8.  He further observes that Sara Lee's counterclaim against him was for roughly $4,000,000, and he suggests it is reasonable to assume his claim was of equal value.  *Id*.

Steven cannot rest on assumptions about his civil claim against Sara Lee to support the reasonableness of his belief.  A party opposing summary judgment "must substantiate his allegations by 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'"  *Holaway v. Stratasys Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (alteration in *Mann*); *see also* Fed. R. Civ. P. 56(c) (parties asserting a genuine factual dispute must support their assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

As the Government observes, Steven's discussion of his civil suit against Sara Lee is devoid of any evidentiary citations.[6]  But what's more concerning to the Court is Steven's unmoored speculation about the viability and value of the lawsuit.  Steven asks the Court to assume his claims against Sara Lee were roughly equal to Sara Lee's counterclaims against him, but he provides no reasoned basis for this assumption besides the fact that the claims were mutually waived.  Steven has also produced no evidence that would allow the trier of fact to assess whether or why he believed his suit would be successful.  Nor has he produced evidence that would allow the trier of fact to determine whether some of Steven's potential recovery would be offset by Sara Lee's counterclaim.  In sum, Steven has produced no evidence at all concerning his civil suit against Sara Lee.

By contrast, the Government has produced substantial, undisputed evidence that Steven was aware of his impending restitution liabilities when he signed the divorce settlement.  *See, e.g.,* Doc. [85] ¶¶ 15, 17-18, 32.  The restitution debt totaled roughly four times what Steven received in the divorce, even if the assets allocated to him are assigned their full value.  *See* Doc. [87] at 31 (explaining that the "grand total" of Steven's share of the divorce settlement amounted to $800,490.0).[7]  Steven has neither contradicted this evidence nor produced other evidence that would support a finding in his favor, so the Government is entitled to summary judgment.

### c.   Lorraine's Good Faith Defense

Lastly, Lorraine insists there is a factual dispute as to whether she is entitled to Section 3307(a)'s good faith defense.  Doc. [86] at 14.  That section protects transferees "who

---

[6] The Court may look elsewhere in the record for evidentiary support if it so chooses.  *See* Fed. R. Civ. P. 56(c)(3).  But even if the Court were so inclined, the only available evidence is Steven's affidavit and deposition, which state generally that he believed his suit against Sara Lee was worth millions of dollars. Doc. [87-7] ¶ 7; Doc. [87-6] 20:11-23:24:19.

[7] These figures are taken from the Braziles' statement of property (Doc. [87-11]).

took in good faith and for a reasonably equivalent value . . . ." 28 U.S.C. § 3307(a).  The Court has already determined that the Braziles' divorce settlement was not for reasonably equivalent value, so Lorraine is not entitled to this defense.

## III.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Lorraine Brazile's Motion to Exclude Testimony of Summary Witness James Appelbaum (Doc. [68]) is **GRANTED** as to Mr. Appelbaum's testimony concerning the Chicago Documents; in all other respects, the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Lorraine Brazile's Motion to Exclude the Testimony of Maia Brodie (Doc. [69]) is **GRANTED** to the extent Ms. Brodie seeks to testify about the Braziles' intent in entering into and finalizing their divorce; in all other respects, the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Steven Brazile's Motion to Dismiss and alternative Motion for Summary Judgment (Doc. [72]) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Lorraine Brazile's Motion for Summary Judgment (Doc. [70]) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff United States of America's Motion for Summary Judgment (Doc. [64]) is **GRANTED** as to Count III of the Complaint.

**IT IS FINALLY ORDERED** that all other motions shall be **DENIED** as moot.


Dated this 15th day of September, 2020.



_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE